UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO AMARAL, an individual,<br><br>         Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>         Defendants. | Case No.: 3:17-cv-2409-L-LL<br><br>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 42)** |

Pending before the Court in this civil rights and tort lawsuit is Defendants City of San Diego and Jeffrey Williams' (collectively, "Defendants") motion for summary judgment. (Doc. No. 42). Plaintiff filed an opposition and Defendants responded. (Doc. Nos. 43 and 45). The parties also filed a joint statement of undisputed material facts. (Doc. No. 44). The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L. R. 7.1. For the reasons stated below, the Court grants the motion as to the federal claims. The remaining state law claims are dismissed without prejudice.

**BACKGROUND**

This case relates to a protest. On the evening of November 9, 2016, protesters marched in downtown San Diego. (Doc. No. 44, Joint Statement of Undisputed Facts ("Stat.") at ¶ 1). Plaintiff attended the protest. (*Id*. at ¶ 2). Police officers from the City

of San Diego, including Williams, were at the protest to provide for the protesters' safety. (*Id.* at ¶ 3). Williams was on a bike team in the area. (*Id.* at ¶ 4).

Around 8:20 p.m. – after protesters started to set fires near the federal buildings downtown – an order for an unlawful assembly was given. (*Id.* at ¶ 5).

Around 8:38 p.m., about 20 minutes after the dispersal order, Williams received a radio transmission that there was a disturbance around 11th Avenue and C Street. (*Id.* at ¶ 7). The transmission also stated individuals might attempt to go onto the highway. (*Id.*)

As Williams approached the area, Plaintiff was in a parking lot at the intersection at 11th Avenue and C Street. (*Id.* at ¶ 9). Plaintiff was approaching police officers who were arresting individuals in the parking lot. (*Id.* at ¶ 10).

Williams used a maneuver to take Plaintiff to the ground. (*Id.* at ¶ 13). Williams testified that he threw his forearms into Plaintiff's mid-back and then wrapped his arms around Plaintiff's waist. (*Id.*) Williams did not fall to the ground. (*Id.* at ¶ 15). He moved his hands to the back of Plaintiff's head and commanded him to stop resisting. (*Id.* at ¶ 17). After he was handcuffed and placed on his right side, Williams and another officer helped Plaintiff get up and walk to a police car. (*Id.* at ¶¶ 21 and 23). Plaintiff did not request medical attention or paramedics while in Williams' presence. (*Id.* at ¶ 26).

Eventually, after Williams was back at the police line, Plaintiff asked the other officer for a paramedic. (*Id.* at ¶¶ 27 and 35). Williams – once informed of that request – instructed the officer to release Plaintiff to the paramedics. (*Id.* at ¶ 35). Plaintiff's time in custody – from the contact with Williams to the release – lasted about 37 minutes. (*Id.* at ¶ 37).

On November 30, 2017, Plaintiff filed his lawsuit against Defendants. He asserts nine claims against them: (1) Fourth Amendment violation under 42 U.S.C. § 1983 for an unlawful stop and detention against Williams; (2) Fourth Amendment violation under 42 U.S.C. § 1983 for excessive force against Williams; (3) Fourth Amendment violation under 42 U.S.C. § 1983 for an unlawful arrest against Williams; (4) Fourth Amendment

1  violation under 42 U.S.C. § 1983 for false imprisonment against Williams; (5) assault
2  against Williams; (6) battery against Williams; (7) intentional infliction of emotional
3  distress against Williams; (8) negligence against Williams; and (9) violations of the Bane
4  Act against Defendants.  (*See* Doc. No. 26, First Amended Complaint).

5  Defendants now move for summary judgment on all nine claims.  (*See* Doc. No.
6  42, Motion for Summary Judgment ("MSJ")).

7  **LEGAL STANDARD**

8  Summary judgment is appropriate where the record, taken in the light most
9  favorable to the opposing party, indicates "that there is no genuine dispute as to any
10 material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
11 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (explaining the
12 standard); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986).

13 To meet their burden, the moving party must present evidence that negates an
14 essential element of the opposing party's case or show that the opposing party does not
15 have evidence necessary to support its case.  *See Celotex*, 477 U.S. at 322-23; *Nissan*
16 *Fire & Marine Ins. Co., Ltd. v. Fritz Companies*, Inc., 210 F.3d 1099, 1105-06 (9th Cir.
17 2000).

18 If the moving party meets this burden, the opposing party must support its
19 opposition by producing evidence in support its claim.  *Celotex Corp.*, 477 U.S. at 324;
20 *Nissan Fire & Marine Ins.*, 210 F.3d at 1103.  The opposing party cannot defeat
21 summary judgment merely by demonstrating "that there is some metaphysical doubt as to
22 the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
23 (1986); *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.
24 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's
25 position is not sufficient.") (internal citation omitted).

26 A fact is material when, under the substantive law, it could affect the outcome of
27 the case.  *Anderson*, 477 U.S. at 248.  A dispute about a material fact is genuine if "the
28

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

When ruling on a motion for summary judgment, courts must view all inferences from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. And courts must not make credibility determinations or weigh evidence. *Anderson*, 477 U.S. at 255.

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, courts are not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (court "should have viewed the facts in the light depicted by the videotape.")

"The mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018).

**DISCUSSION**

***Unlawful Arrest Claim***

Plaintiff asserts a Fourth Amendment claim under 42 U.S.C. § 1983 against Williams for an unlawful arrest. Williams argues he is entitled to summary judgment on the claim because probable cause existed to arrest Plaintiff. (MSJ at 19).[1]

---

[1] Williams contests Plaintiff's assertion that he was arrested, not detained. (*Id*.; Doc. No. 43, Opposition ("Oppo") at 16). For purposes of this Order, the Court will assume – without deciding – an arrest occurred. Williams did not have a warrant to arrest Plaintiff.

 1     "To determine whether an officer had probable cause for an arrest, [courts]
 2 examine the events leading up to the arrest, and then decide whether these historical facts,
 3 viewed from the standpoint of an objectively reasonable police officer, amount to
 4 'probable cause.' Because probable cause deals with probabilities and depends on the
 5 totality of the circumstances, it is 'a fluid concept' that is not readily, or even usefully,
 6 reduced to a neat set of legal rules. It requires only a probability or substantial chance of
 7 criminal activity, not an actual showing of such activity. Probable cause is not a high
 8 bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotation marks
 9 and citation omitted).

10     "A warrantless arrest is reasonable if the officer has probable cause to believe that
11 the suspect committed a crime in the officer's presence." *Id.; Devenpeck v. Alford*, 543
12 U.S. 146, 152 (2004) ("A warrantless arrest by a law officer is reasonable under the
13 Fourth Amendment where there is probable cause to believe that a crime has been or is
14 being committed."); *Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th
15 Cir. 2006) ("An officer who observes criminal conduct may arrest the offender without a
16 warrant, even if the pertinent offense carries only a minor penalty."); *United States v.
17 Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) ("Probable cause to arrest exists when
18 officers have knowledge or reasonably trustworthy information sufficient to lead a person
19 of reasonable caution to believe that an offense has been or is being committed by the
20 person arrested.")

21     Williams argues, in part, that probable cause existed pursuant to Cal. Pen. Code
22 section 409, which states: "every person remaining present at the place of any riot, rout or
23 unlawful assembly, after the same has been lawfully warned to disperse . . . is guilty of a
24 misdemeanor." (MSJ at 10 and 20).

25     Plaintiff – without analysis – concludes there was no probable cause to arrest him
26 for unlawful assembly. (Oppo at 18). To support that conclusion, Plaintiff cites Exhibit
27 B at 70:22 - 71:4 and Exhibit C at 101:8 -102:15. (*Id.*) The excerpt from Exhibit B is
28 testimony from Williams' deposition in which he testifies that he did not know whether

Plaintiff heard the order to disperse. The excerpt from Exhibit C – testimony from Plaintiff's expert witness – discusses the same factual scenario. But Plaintiff's subjective awareness is not relevant. *Lyons v. City of Seattle*, 214 Fed. App'x 655, 657 (9th Cir. 2006) ("It is irrelevant whether each plaintiff actually heard an order. What is relevant is whether the police issued the orders and reasonably believed there was a 'fair probability' that the plaintiffs heard at least one of the orders, and voluntarily disobeyed.")

Here, an order to disperse was given at about 8:20 p.m. (Stat. at ¶ 5). The incident between Williams and Plaintiff occurred about 20 minutes after it – around 8:38 p.m. (*Id*. at ¶ 7).[2] Plaintiff was in the parking lot – where other police officers were making arrests – approaching the officers. (*Id*. at ¶¶ 10-11).[3] Williams had also received a radio transmission that there was a disturbance in that area and individuals intended to move onto the highway. (*Id*. at ¶ 7). And that area was close to the highway entrance. (Oppo, Exhibit A at 122). The Court – viewing the evidence in the light most favorable to Plaintiff – finds no reasonable jury could conclude probable cause to arrest Plaintiff pursuant to section 409 did not exist. *See, e.g., Lyons*, 214 Fed. App'x at 657-658; *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (setting forth standard on summary judgment).

There is no need to address the other purported offenses. *Wesby*, 138 S. Ct. at 584 n.2 ("Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking."); s*ee Edgerly v. City and County of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) ("Probable cause supports an arrest so long as the arresting officers had

---

[2] Plaintiff does not contend he was unable to disperse in that timeframe. (*See* Oppo).
[3] Notably, the purpose behind section 409 "is to enable law enforcement officers to defuse riotous situations by ordering persons to remove themselves from the area without any need to distinguish between the rioters and bystanders whose very presence aggravates the problem of restoring tranquility." *People v. Cipriani*, 18 Cal. App. 3d 299, 309 (1971).

probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest.")  The Court therefore grants the MSJ as to Plaintiff's third and fourth claims.[4]

### *Unlawful Detention Claim*

Plaintiff asserts a Fourth Amendment claim under 42 U.S.C. § 1983 against Williams for an unlawful detention.  But he did not respond to Williams' arguments – under the reasonable suspicion standard – as to that claim.  (MSJ at 9-11; Oppo at 16).[5]  The Court construes that as a waiver.  *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005); Civ. L. R. 7.1(f)(3).  Regardless, the claim is subject to summary judgment for the same reasons as the unlawful arrest claim.  *See, e.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (setting forth the reasonable suspicion standard); *Navarette v. California*, 572 U.S. 393, 397 (2014).  The Court therefore grants the MSJ as to Plaintiff's first claim.[6]

### *Excessive Force Claim*

Plaintiff asserts a Fourth Amendment claim under 42 U.S.C. § 1983 against Williams for excessive force.

---

[4] Plaintiff cites *McKenzie v. Lamb*, 738 F.2d 1005 (9th Cir. 1984) for the proposition that "where a person is arrested for more than one offense and there is probable cause for one offense but not others, a plaintiff may still recover for any additional injury or damage resulting from the arrest for the offense for which there was no probable cause."  Yet, Plaintiff does not explain how that applies in this case.  (Oppo at 18); *see McKenzie*, 738 F.2d at 1011.

[5] Plaintiff could have pursued both claims.  *See* Fed. R. Civ. P. 8.

[6] The operative complaint does not mention the First Amendment.  (Doc. No. 26, First Amended Complaint).  But Plaintiff refers to it on several occasions in his Opposition.  (Oppo at 14-16, 22).  As noted above, an order to disperse was in effect at the time of the incident.  (Stat. at ¶ 5).  Plaintiff does not cite law that states he has a First Amendment right to remain in the area (or move into a parking lot towards police officers making arrests) while a lawful dispersal order was in effect.  *Id*.  And he does not challenge the order itself.  *Id*.

An officer's use of force is excessive – and therefore violates the Fourth Amendment – if it is objectively unreasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Scott*, 550 U.S. at 383.

To assess whether an officer's actions were reasonable, courts must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. In doing so, courts should consider: (1) the amount and type of force; (2) the severity of the crime at issue; (3) whether the suspect poses an immediate threat to the safety of the officers or others; and (4) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id*. The most important factor is whether the suspect posed an immediate threat. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). The assessment is based on the perspective of a reasonable officer on the scene – not hindsight. *Graham*, 490 U.S. at 396.

Police officers must apply abstract legal standards to a variety of factual circumstances — often in a matter of seconds. *See id*. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.")

If the evidence – viewed in the light most favorable to Plaintiff – could support an excessive force finding at trial, Williams is not entitled to summary judgment. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

Williams argues he is entitled to qualified immunity as to the excessive force claim. (*See* MSJ at 17). The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To determine whether an officer is entitled to it, courts consider: (1) whether the officer violated a constitutional right; and (2) whether that right was "clearly established" at the time of the officer's alleged misconduct. *Pearson*, 555 U.S. at 232.

The Court will start with the "clearly established" prong. *See Pearson*, 555 U.S. at 236; *Wesby*, 138 S. Ct. at 589 n.7 ("We continue to stress that lower courts should think hard, and then think hard again, before addressing both qualified immunity and the merits of an underlying constitutional claim.") (internal quotation marks and citation omitted); *O'Doan v. Sanford*, No. 19-15623, 2021 U.S. App. LEXIS 8077, at *17 (9th Cir. Mar. 19, 2021) (deciding to resolve an excessive force case entirely on the second prong).

To be clearly established, "a right must be sufficiently clear that every reasonable official would [have understood] that what [they] [are] doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citation omitted). Stated differently, officers are immune "unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (internal citation omitted).

The Supreme Court has told courts not to define the law "at a high level of generality." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (internal quotation marks and citation omitted); *White v. Pauly*, 137 S. Ct. 548 (2017); *see, e.g., S. B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) ("We hear the Supreme Court loud and clear. Before a court can impose liability on [an officer], we must identify precedent as of [the date of the incident]— that put [the officer] on clear notice that using deadly force in these particular circumstances would be excessive.")

The inquiry is therefore "whether clearly established law prohibited [Williams] from using the degree of force that he did in the specific circumstances that [he] confronted." *O'Doan*, 2021 U.S. App. LEXIS 8077 at *18-19 (internal quotation marks omitted); *see also Mullenix v. Luna*, 577 U.S. 7 (2015).

1  Williams argues "there is no case law that would have placed [him] on notice that
2  his [force] . . . was unconstitutional." (MSJ at 18).
3  In most circumstances, like here, a cite to the general rule on excessive force is
4  insufficient. *Supra*. That is especially true given the Supreme Court's recent decisions
5  in this area. *Supra*.; *O'Doan*, 2021 U.S. App. LEXIS 8077 at *17-19.
6  Here, the incident occurred during a protest. (Stat. at ¶ 1). A dispersal order had
7  been in effect for about 20 minutes. (*Id*. at ¶¶ 5-7). Williams responded to a radio
8  transmission related to a disturbance around 11th Avenue and C Street. (*Id*. at ¶ 7). As
9  he arrived at that area, he saw Plaintiff enter the parking lot. (Doc. No. 42, Exhibit 6 at
10 48-53 and 19). Plaintiff was moving towards the back of an officer in the parking lot.
11 (*Id*.; *see also* Stat. at ¶¶ 9-10). He also testified that Plaintiff took a "boxer's stance."
12 (Doc. No. 42, Exhibit 6 at 48-53, 19, and 26). In essence, Plaintiff had one foot in front
13 of the other, knees slightly bent, and his right hand was clutched into a fist. (*Id*.) It took
14 Williams a few seconds to reach Plaintiff. (*See* Doc. 42, Exhibit 6 at 51).
15 Williams used a maneuver to take Plaintiff to the ground. (Stat. at ¶ 13). Williams
16 testified that he threw his forearms into Plaintiff's mid-back and then wrapped his arms
17 around Plaintiff's waist. (*Id*.) Williams did not fall to the ground. (*Id*. at ¶ 15). He
18 moved his hands to the back of Plaintiff's head and commanded him to stop resisting.
19 (*Id*. at ¶ 17).
20 After he was handcuffed and placed on his right side, Williams and another officer
21 helped Plaintiff get up and walk to a police car. (*Id*. at ¶¶ 21 and 23). Plaintiff did not
22 request medical attention or paramedics while in Williams' presence. (*Id*. at ¶ 26).
23 Eventually, after Williams was back at the police line, Plaintiff asked the other officer for
24 a paramedic. (*Id*. at ¶¶ 27 and 35).
25 The Court must rely on Plaintiff's version of the facts (and make all inferences in
26 the light most favorable to him). But allegations from the complaint, unsupported
27 conjecture, and conclusory statements are insufficient. Plaintiff contends he did not make
28 a fist. (Oppo at 3). He cites Exhibit A at 136:11-25 in support. (*Id*.) In that excerpt of

his testimony, Plaintiff testifies he does not recall forming a fist while in the parking lot. (*See* Exhibit A at 136:11-25). But the lack of memory or inability to recall an event or a conversation, without more, does not create a genuine material dispute. *FEC v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002) ("failure to remember and lack of knowledge are not sufficient to create a genuine dispute.") Plaintiff also did not present evidence about his hand movement prior to contact with Williams. (*See* Oppo); (*see also* Exhibit A).

There is no dispute that Plaintiff was moving towards an officer in the parking lot. That happened about 20 minutes after the dispersal order was made. (Stat. at 5-7). Plaintiff also did not cite evidence about his stance (or posture) while he was in the parking lot and as he approached the officer (i.e., one leg in front of the other/knees bent). (*See* Oppo at 1-5); (*see generally* Exhibit A). Plaintiff does not provide evidence to dispute he was approaching an officer from behind - as indicated in Williams' testimony. (*See* Oppo; *see also* Stat. at ¶¶ 9-10; Exhibit 6); (*see generally* Exhibit A).

Defendants also provided videos from cameras that were recorded at the time of the incident (including Williams' video). The Court viewed the videos (and individual frames) several times while assessing the MSJ. *See Scott*, 550 U.S. at 380.

The Court finds the videos support Williams' version of events, including Plaintiff's stance, his movement in the parking lot, the perception of a closed hand, and the surrounding circumstances. *See Scott*, 550 U.S. at 380; *Vos*, 892 F.3d at 1028. But there is no need for the Court to rely on it to find Williams is entitled to judgment as a matter of law. The videos - viewed in the light most favorable to Plaintiff - also do not make a genuine dispute as to a material fact.

Plaintiff did not present evidence that put in dispute the material facts that entitle Williams to judgment. (*See* Oppo).[7] Again, Plaintiff did not present evidence about his

---

[7] Plaintiff cited Exhibit A at 150:3-18. (Oppo at 3). That does not appear on the ECF filing. (*See* Doc. No. 43-2 (Exhibit A)).

stance (i.e., the position of his legs). And Plaintiff's statement about his hand is insufficient. There is also no dispute Plaintiff was moving towards a police officer amid the situation occurring in the parking lot and the dispersal order. (Stat. at ¶¶ 5-7, 9-10).

To defeat qualified immunity, Plaintiff cites *Smith v. City of Hemet*, 394 F.3d 689, 703-704 (9th Cir. 2005) (en banc). (Oppo at 18-22). Plaintiff does not analyze the facts of that case, which involved a response to a domestic abuse incident and the refusal of the alleged perpetrator to place his hands on his head:

> [The officer] instructed [plaintiff] to turn around and place his hands on his head. [Plaintiff] again refused to obey the order, despite being informed that [the canine] could be sent to subdue him and might bite. Without further warning, [the officer] sprayed [plaintiff] in the face with pepper spray. [Plaintiff] responded with expletives and attempted to reenter his residence, but the door had been locked by [his wife]. Several more officers then moved onto the porch, grabbed [plaintiff] from behind, slammed him against the door, and threw him down on the porch; [the officer] ordered the canine to attack him. [The canine] bit [Plaintiff] on his right shoulder and neck area. At some point, either before or after the order to attack, the dog sank his teeth into [Plaintiff]'s arm and clung to it.

*Id*. at 693-694. The factual circumstances are far different than this case (including the factual background and use of force).

The out-of-circuit opinions (not precedent) Plaintiff relies on are also not sufficient. *See Morrison v. Green Township*, 583 F.3d 394 (6th Cir. 2009) (handcuffing handcuffs on a suicidal teenager that caused black and blue marks while attempting to take her to a hospital); *Karels v. Storz*, 906 F.3d 740, 742-743 (8th Cir. 2018) (officer repeatedly poked an individual her in the collarbone, grabbed her wrist, and threw her onto concrete steps - while responding to a disturbance call related to intoxicated neighbors); *Holmes v. Hoffman Estates*, 511 F.3d 673, 685-686 (7th Cir. 2007) (officer slammed head into roof of car, performed a wristlock, threw him to the ground, and grinded his knee into the individual's face (while investigating him for robberies)).

Williams cites *Jackson v. Bremerton*, 268 F.3d 646 (9th Cir. 2001) in support of the MSJ. *Id*. at 652 (no constitutional violation based on use of pepper spray against an individual who attempted to interfere with an arrest).

Overall, Williams met his burden; Plaintiff did not. *Celotex Corp.*, 477 U.S. at 324. Given the above undisputed material facts, *supra*, the Court finds Williams is entitled to qualified immunity. On November 9, 2016, it was not clearly established that the use of force at issue in the situation Williams confronted was excessive – even viewed in the light most favorable to Plaintiff. *See Wesby*, 138 S. Ct. at 591 ("neither the panel majority nor the [plaintiffs] have identified a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation under similar circumstances.") (internal quotation marks and citation omitted). The Court therefore grants the MSJ as to Plaintiff's second claim.

### *State Law Claims*

Because the Court granted summary judgment on all the federal claims, it must next consider whether it should nevertheless continue to exercise supplemental jurisdiction over the remaining state law claims (assault, battery, intentional infliction of emotional distress, negligence, and state civil rights claim). The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997); *San Pedro Hotel Co. v. City of L.A.*, 159 F.3d 470, 478 (9th Cir. 1998); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011).[8]

### **CONCLUSION**

For the reasons stated above, the Court grants Defendants' motion for summary judgment as to the federal claims (causes of action one through four) and dismisses the

---

[8] The Court notes that Plaintiff's Bane Act claim raises complex areas of state law. *See Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018); 28 U.S.C. § 1367(c)(1).

state law claims (causes of action five through nine) without prejudice.  The Clerk is directed to enter judgment pursuant to this Order and close the case.

**IT IS SO ORDERED.**

Dated:  March 31, 2021

Hon. M. James Lorenz
United States District Judge